IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. REAP, JR., | : | No. 3:13cv217 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| PLUMBERS & PIPEFITTERS | : | |
| NATIONAL PENSION FUND, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion for summary judgment. (Doc. 16). This motion is fully briefed and ripe for disposition.

**BACKGROUND**

The instant action arises from the Defendant Plumbers and Pipefitters National Pension Fund's (hereinafter "defendant" or the "Fund") denial of a full pension to Plaintiff Michael J. Reap, Jr. (hereinafter "Reap"). The parties' undisputed material facts are as follows:

Reap worked in the plumbing and pipefitting industry from 1966 to 2009. (Doc. 17, Def.'s Statement of Material Facts (hereinafter "SOF") ¶¶ 19, 32). From 1986 through 1997, Reap was employed at Construction Unlimited and held two positions: (1) 1986 through 1988 - Journeyman Pipefitter and (2) 1989 through 1997 - Piping Planner. (Doc. 20, Ex. A, Aff. of Michael Reap (hereinafter "Reap Aff.") ¶ 5). Reap's work as a

piping planner for Construction Unlimited is at issue in the instant action.

Initially, Reap's position as a piping planner was considered "Covered Employment." That is, Construction Unlimited had an obligation to contribute to the Fund on Reap's behalf. (SOF ¶ 14; Doc. 14-1, Admin. R. (hereinafter "R.") at 280, 414). In 1991, however, the defendant informed Reap that the position of piping planner would no longer be considered Covered Employment. (Reap Aff. ¶ 6). In response, Reap contacted his union to discuss whether this change would adversely affect his pension. (Id. ¶ 7). The business agent of Reap's union advised him that his pension would not be affected. (Id. ¶ 8). Based on this information, Reap continued to work as a piping planner for Construction Unlimited from 1991 through 1997. (SOF ¶ 23).

On September 12, 2003, Reap mailed a letter to the defendant inquiring about the status of his pension. (Id. ¶ 28). The defendant replied that Reap's work as a piping planner from 1991 through 1997 was not Covered Employment. (SOF ¶ 29). Because this work was not Covered Employment, Reap experienced a Separation from Employment.[1]

---

[1] A Separation from Employment occurs when a participant fails to complete 1/10th of a year of future service credit (150 or more hours) for five consecutive years. (SOF ¶¶ 16-17; R. at 304, 420-21).

2

(Id.)  As such, Reap was entitled to a lower pension.

Six years later, Reap requested an estimate of benefits from the Fund's website on May 29, 2009.  (Id. ¶ 30).  On July 21, 2009, the defendant advised Reap that he incurred a Separation from Employment while working at Construction Unlimited from 1991-1997.  (Id. ¶ 31)  Accordingly, Reap was entitled to a lower pension.  (Id.)

In September 2009, Reap applied for benefits and was awarded his pension on October 21, 2009.  (Id. ¶ 32).  The pension he received took into account the Separation from Employment and was thus lower than it would have been had there not been a separation.  On November 14, 2009, Reap submitted a letter to the defendant's Board of Trustees (hereinafter "Trustees") appealing the Fund's decision regarding his Separation from Employment.[2]  (Id. ¶ 33).  The Trustees reviewed Reap's appeal in March 2010 and upheld the Fund's determination.  (Id. ¶¶ 34-35).

In response to the Trustee's decision that Reap experienced a

---

[2] The Trustees administer the Fund.  (SOF ¶ 8).  As administrators, the Trustees do not have any financial interest in defendant's assets because they do not contribute to the Fund. (Id.)  The Trustees ensure that the Fund determines each participant's pension benefit pursuant to the Plan of Benefits (hereinafter the "Plan").  (Id. ¶ 9).

3

Separation from Employment that resulted in a lower pension benefit, Reap filed the instant complaint pursuant to the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"). Reap's ERISA complaint contains two claims. First, Reap contends that the Fund's calculation of his lower pension was arbitrary, capricious, unsupported by substantial evidence and erroneous as a matter of law. Second, Reap asserts an equitable estoppel claim. He contends that the Fund should be estopped from awarding him a lower pension. The parties then briefed the issues bringing the case to its present posture.

**JURISDICTION**

As plaintiff brings suit under ERISA, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**LEGAL STANDARD**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"

See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its

pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

Defendant moves for summary judgment on Reap's ERISA claims.[3] Reap argues that genuine issues of material fact on his equitable estoppel claim preclude summary judgment.[4] Specifically, Reap contends that he relied to his detriment on his union's advice that his continued work as a

---

[3] Reap first claims that the defendant's decision to award him a lower pension was "arbitrary, capricious, not made in good faith, unsupported by substantial evidence, erroneous as a matter of law, and in violation of ERISA." (Doc. 1, Compl. ¶ 25). The defendant contends that the undisputed material facts demonstrate that it properly calculated Reap's pension. (SOF ¶¶ 16-23, 25-30). As such, the burden shifts to Reap, who must go beyond his pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Celotex at 324.
   Here, Reap fails to go beyond his pleading and designate any specific fact that the defendant misapplied the plan's provisions pertaining to the calculation of his pension benefit. This complete failure of proof on essential elements of Reap's claim entitles defendant to judgment as a matter of law pertaining to the calculation of Reap's pension benefit. Id. at 322-23.

[4] While Reap states that his ERISA claim arises under section 502(a)(1)(B), a liberal review of Reap's complaint establishes his equitable estoppel claim falls under section 502(a)(3). See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994) (stating that an equitable estoppel claim must be brought under section 502(a)(3)).

6

piping planner with Construction Unlimited would not adversely affect his pension. The defendant asserts that the union lacked power and authority to give substantive advice pertaining to the Fund, which precludes a claim for equitable estoppel. After careful consideration, the court agrees with the defendant.

The Third Circuit Court of Appeals requires an ERISA plaintiff asserting an equitable estoppel claim to establish "(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." Burstein v. Ret. Account Plan For Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 383 (3d Cir. 2003) (quoting Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994)). Additionally, the plaintiff bears the burden of proof on each estoppel element. Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1554 (3d Cir. 1996). The court addresses these issues *in seriatim*.

### A. Material Representation

Reap must first establish a material representation. "Any provision of a plan subject to ERISA that establishes a benefit is a material term of the plan." Curico, 33 F.3d at 237. The material representation, however,

must "mislead a reasonable employee in making an adequately informed decision about if and when to retire." Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993); see also Pell v. E.I. DuPont De Nemours & Co., Inc., 539 F.3d 292, 300-01 (3d Cir. 2008) (finding that misreporting the amount of a pension benefit is a material misstatement).

In the instant case, Reap could have a valid claim if he demonstrated that the defendant misled him regarding the amount of his pension. He has failed to make this showing. In September 2003, Reap contacted the defendant to ascertain the status of his pension. (R. at 54). The defendant responded a month later stating that Reap experienced a Separation from Employment resulting in a lower pension benefit. (Id. at 94-96). Six years later in 2009, Reap requested an updated status on his pension. (Id. at 22). Once again, the defendant responded that Reap would be eligible for a lower pension because he experienced a Separation from Employment. (Id. at 23-24). Reap appealed this determination to the defendant's Trustees. (Id. at 33-34). The Trustees upheld the defendant's earlier determinations that Reap experienced a Separation from Employment. (Id. at 210-11). In short, the defendant, on three separate occasions, advised Reap that he experienced a Separation

from Employment, which resulted in the lower pension he eventually received.  Ergo, viewing the facts in the light most favorable to Reap, the court finds that Reap failed to establish a material misrepresentation pertaining to his pension benefit.

## B.  Reasonable and Detrimental Reliance

Although the court has concluded that Reap cannot meet the first equitable estoppel element, we nevertheless will address the remaining two elements.  The second equitable estoppel element requires Reap to demonstrate "(1) reasonableness and (2) injury."  Curico, 33 F.3d at 237.  Reap argues that he reasonably relied on his union's business agent's advice because the business agent had apparent authority to give advice pertaining to his pension.

The Third Circuit Court of Appeals has determined that a plan fiduciary can be responsible for the material misstatements of an individual when that individual "acts with apparent authority to determine an employee's status in relationship to a benefit plan." Pell, 539 F.3d at 301 (citation omitted).  Apparent authority "(1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that

9

the agent is authorized." Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 989 (3d Cir. 1995) (citation omitted).

It is uncontroverted that both elements necessary for the existence of apparent authority are absent from this case. The defendant never vested the union's business agent with power, discretion or control over the administration of the plan such that they could be considered fiduciaries of the plan or an agent for the plan. (Doc. 17-1, Decl. of William T. Sweeney (hereinafter "Sweeney Decl.") ¶ 13). Rather, section 10.5 of the Plan states "the Fund shall not be bound by the representations of any person, other than the Trustees, regarding participation in and eligibility for benefits under this Plan . . . ." (Sweeney Decl. ¶ 12; R. at 342). Also, the last page of the summary plan description reiterates section 10.5 in an enclosed box on the bottom of the page stating:

> Nothing in this summary description is meant to interpret or extend . . . the provisions expressed in the formal text of the Plan. . . . The Fund shall not be bound by the representations of any person, other than the Trustees, regarding participation in the Plan, eligibility for benefits under the Plan, the status of employees or employers under the Plan, or any other matters relating to the Pension Plan or Fund.

(R. at 446). Reap received a copy of the Plan and Summary Plan

10

Description in December 1992, December 1997, November 2002 and December 2007. (Sweeney Decl. ¶ 15). Under these circumstances, the defendant demonstrated that the union's business agent lacked any actual or apparent authority to offer advice.

In support of his position that the business agent had apparent authority to give advice, Reap relies on two cases from the Third Circuit Court of Appeals. In <u>Taylor v. Peoples Natural Gas Co.</u>, a former employee claimed that the Supervisor of Employee Benefits led him to believe that an early retirement incentive plan would apply to him retroactively. 49 F.3d at 989. The Third Circuit held that the Supervisor had apparent authority because "the [Fund's] undisputed vesting of [the supervisor] with authority to advise employees of their rights and options under the Pension Plan clearly constituted a manifestation that he was their agent." <u>Id.</u> Additionally, employees reasonably believed that the supervisor had the authority to counsel plan participants because he was the key person in the retirement process and the Fund failed to take any steps to curb the scope of the supervisor's authority. <u>Id.</u>

Reap also relies on <u>Pell v. E.I. DuPont De Nemours & Co., Inc.</u>, where the Third Circuit concluded that a director of employee

compensation and benefits acted with apparent authority.  539 F.3d at 300-02.  In Pell, the Fund drafted specific guidelines pertaining to pension benefits.  The guidelines stated that when one employee is transferred from one company to another, the director of employee benefits would provide a letter to the employee describing "in detail the employee's status with regard to . . . [the] benefit plans."  Id. at 301.  Thus, it was reasonable for the employee to believe that the director of employee benefits was authorized to speak on the fund's behalf.  Id.

   The court finds Taylor and Pell distinguishable from the instant case.  In Taylor and Pell, the Fund took affirmative steps to create a manifestation that an individual outside the Fund was authorized to speak on its behalf.  Here, the defendant took no such action.  The defendant did not vest any union official with the authority to advise employees of their rights and options under the Plan.  The defendant did not draft guidelines that would allow union officials to give advice pertaining to employee pension benefits. Rather, as previously stated, the undisputed evidence establishes that the defendant never vested the union's business agent with power, discretion or control over the administration of the plan such that they could be considered fiduciaries of the plan or an agent for the

plan.  (Sweeney Decl. ¶ 13).

In short, while unions owe a duty of fair representation to their members, they are considered ERISA fiduciaries only when, and to the extent that, they function as plan administrators.  Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158 (3d Cir. 1990); Rosen v. Hotel & Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery & Delaware Cntys., Pa., 637 F.2d 592, 599 n.10 (3d Cir. 1981) (citations omitted); see also Cataldo v. U.S. Steel Corp., 676 F.3d 542, 552-53 (6th Cir. 2012) (stating that union officials explanation of plan benefits and assurances to those considering retirement failed to transform the union into an ERISA fiduciary).  Accordingly, the court finds that Reap has failed to establish reasonable and detrimental reliance.

## C. Extraordinary Circumstances

The third element that Reap would have to establish is "extraordinary circumstances."  Extraordinary circumstances arise when "there are affirmative acts of fraud, a network of misrepresentations . . . over an extended course of dealing, or where particular plaintiffs are especially vulnerable."  Pell, 539 F.3d at 303-04 (citation omitted).  Here, Reap argues that he is especially vulnerable.  Specifically, Reap asserts

13

that he consistently went to his union to determine employee benefit issues prior to receiving the business agent's misrepresentation pertaining to his pension.  As such, Reap was vulnerable to the Plan's technical rules.

The undisputed record, however, establishes that the defendant, at no point in time, vested any union official with the actual or apparent authority to advise employees of their rights and options under the Plan. The Plan itself specifically states that "the Fund shall not be bound by the representations of any person, other than the Trustees, regarding participation in and eligibility for benefits under this Plan . . . ."  (Sweeney Decl. ¶ 12; R. at 342, 446).  In short, Reap's decision to confer with his local union instead of contacting the Fund does not constitute extraordinary circumstances.  See  Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co., 188 F.3d 130, 152 (3d Cir. 1999) (finding an absence of extraordinary circumstances when the employees fail to present evidence which supports an inference of bad faith and/or fraudulent conduct); Kurz, 96 F.3d at 1553-54 (holding that extraordinary circumstances do not exist when the plaintiff fails to establish repeated misrepresentations over time

or that plaintiffs are particularly vulnerable).  Therefore, the court finds that Reap has failed to demonstrate extraordinary circumstances.

**CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment will be granted.  First, Reap has failed to contest the defendant's calculation of his pension benefit.  Second, Reap's equitable estoppel claim fails as a matter of law because he meets none of the necessary elements.  An appropriate order follows.

**Date:  1/29/14**             **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**